[No. 4464. Decided December 31, 1902.]

THE STATE OF WASHINGTON *on the Relation of F. P. Race*
*et al., Respondents,* v. THOMAS CRANNEY, *as Treasurer*
*of Island County, Appellant.*

APPEAL — INTEREST OF APPELLANT.

Where one has sufficient interest to be made a party to an ac-
tion, he cannot be denied an appealable interest in the cause,
should the judgment be against him.

MANDAMUS — ISSUANCE OF TAX DEED — PARTIES TO PROCEEDING.

Upon a petition for mandamus to compel a public officer to

convey lands purchased at tax sale, private persons who claim an interest in the land are proper party defendants, under the provisions of our code which permit the rights of all persons in the subject-matter in controversy to be determined in one action.

SAME — RIGHT OF REDEMPTION.

A county treasurer is warranted in refusing to execute a conveyance to the purchaser at a delinquent tax sale, although the latter has tendered all the taxes due and is fully entitled to a deed, if before conveyance full redemption is made by the owner, since the statute governing tax sales permits redemption therefrom at any time before the execution of the tax deed.

Appeal from Superior Court, Island County.—Hon. GEORGE C. HATCH, Judge. Reversed.

*Lester Still* and *S. D. King,* for appellant.

*A. W. Buddress,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—The respondents move to dismiss the appeal herein for the reason that the appellant has no appealable interest in said cause. There seems to be nothing in this motion. If a party has sufficient interest to make him a party to an action, he has sufficient interest to appeal should the judgment be against him. The motion is denied.

This is a proceeding in mandamus. The alternative writ was not asked for, but a petition or complaint was filed alleging, in substance, that the petitioners had bought at tax sale the lands described in the petition; that the money to pay for the same had been delivered to the treasurer of Island county, who neglected and refused to execute a deed as by law provided; that the defendants Graham and Keene claim some interest in and to the land, which the petition alleged to be inferior and subordinate to the claim of petitioners. The

petition prayed for a peremptory writ of mandate against defendant Cranney, as treasurer of said county of Island, commanding him to forthwith make, execute, and deliver to said relators, as provided by law, a good and sufficient deed of conveyance of and to the premises described; that relators have judgment against said Cranney, as treasurer, for the sum of $1,500 damages; that they have judgment against all of said defendants forever debarring and foreclosing them from claiming or asserting any right to said premises, and for their costs and disbursements. Notice of application for mandate was duly served. The defendants moved to dismiss the petition for the reason that several distinct, separate, and independent matters and several parties defendant were improperly united; that the claim and title of defendants Graham and Keene, or either of them, cannot be inquired into on proceedings in mandamus; and that defendant Cranney had no interest or concern therein. This motion was denied, and a demurrer was interposed by defendant Cranney, to the effect that the petition did not state facts sufficient to constitute a cause of action, and for the other grounds mentioned in the motion to dismiss. The demurrer was overruled, and the defendant Cranney answered. The essential part of the answer is that the defendant Rebecca Graham was the owner of the lands and premises in the petition mentioned; that on the 7th day of March, 1902, the relators delivered to the treasurer the private and personal check of John Seymore, drawn upon and payable by a bank situate and doing business in the city of Everett, Snohomish county, Washington, for the sum of $123.40, and then demanded a deed of conveyance to relators of said lands as upon said tax sale; that afterwards, on the 7th day of March,

1902, and before any deed whatever had been either drawn, signed or executed, the said defendant, Rebecca Graham, as owner of said lands, paid to the defendant Cranney, as county treasurer, the sum of $120.40, in full payment of all taxes, interest, costs, and penalties upon all said lands and premises, and for which the same was so sold, and in full redemption of said lands, and the whole thereof, from said sale thereof mentioned in said petition; whereupon said defendant, as treasurer, made, signed, and sealed a due and lawful certificate of redemption of said lands, and the whole thereof, from said sale, to said Rebecca Graham; and for said reason refused to make and deliver to relators the tax deed demanded. The treasurer, in his affirmative answer, states that upon receiving a check from the relators for the payment of the taxes he transmitted the same to Dexter Horton & Co., Bankers, of Seattle, for collection, and credit to his account; but before he was notified by the bank that the check was paid and the amount credited to him the money had been received for the redemption of said land. Upon this state of pleadings the case went to trial, and the court found the state of facts upon which it based its conclusion that the relators were entitled to the deed demanded, and the mandate was issued to the defendant Cranney, treasurer aforesaid, commanding him forthwith to make, execute, and deliver said deed to the relators aforesaid to the land described in the petition. It was further decreed that neither of said defendants Rebecca Graham or A. I. Keene had any right, title, or interest in or to the said premises; that the said relators Race and Seymore were the owners in fee simple, and entitled to the possession of the premises described in the petition, and were entitled to costs and disbursements

against all the defendants.   No damages were awarded.
From this judgment the appeal is taken.

We will first notice the petition and demurrer, which
may be considered together, as they involve the same
question, viz., that the court erred in investigating the
validity or invalidity of the asserted claims of defend-
ants Graham and Keene in a mandamus proceeding, and
that the complaint was bad for the reason that defendants
Graham and Keene were joined with the treasurer in the
petition.   It is insisted that the office of the writ is limited
to the control of official action, and the inclusion of for-
eign matter bears the whole to the ground.   This might be
true if any foreign matter had been included in the peti-
tion; at least the petition in such case would have been sub-
ject to a motion of some kind.   But as we view the petition
in this case, the incorporation of the defendants Graham
and Keene was not the incorporation of foreign matter, but
was an attempt to have interests adjudicated which were
vitally connected with the subject matter of the proceed-
ing.   Mandamus originally issued only out of the court
of King's Bench.   It was a prerogative writ, and its scope
was exceedingly limited.     There is no such thing as a
prerogative writ in our judicial system, nor can there be
under our form of government; but mandamus is a pro-
cedure under our Code.   It is a judicial investigation, the
object of which is the determination of civil rights, the
same as in any ordinary proceeding; not only the deter-
mination of rights, but their determination in such a way
as to culminate in an effective judgment.     Therefore all
rights of all parties, which are necessary to the conclusive-
ness of the judgment, should be determined in the pro-
ceeding; otherwise a multiplicity of suits would become
necessary, the prevention of which is the evident and ex-

press object of the statute. As distinguished from the old common-law writ, and the restrictions which were thrown around not only its execution, but the courts from which it could issue, our statute (§ 5755, Bal. Code) provides that:

"It may be issued by any court, except a justice's or a police court, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person."

In this case the writ is invoked to compel the performance of an act which the law specifically enjoins as a duty resulting from an office. The law provides, in § 5760, Bal. Code, for the trial in certain cases by a jury, and also provides that damages may be awarded in such cases. Section 5775 provides that, "Except as otherwise provided in this chapter, the provisions of the Code of Procedure concerning civil actions are applicable to and constitute the rules of practice in the proceedings in this chapter." Under the general provisions of the Code of Procedure concerning civil actions there is no question but that all the parties who were brought into court by this petition would have been proper parties to a complaint. Indeed, they would have been necessary parties to have insured an effective determination of the questions raised; for the rights of the defendants Graham and Keene could not have been adjudicated in an action against the treasurer, to which they were not made parties. Under this sweeping provision of the statute we see no escape from the conclusion that all parties whose interests were affected by the judgment were

proper parties to the action, and were properly brought in. This is in harmony with the spirit of the Code generally.

A great many cases are cited by the appellant on this proposition, but we are unable to conclude from an investigation of them that any of them sustain the contention advanced. This question was passed upon, however, by the supreme court of California in *People v. Board of Supervisors,* 27 Cal. 655, and there it was held that the provisions of the Code of Procedure concerning civil actions were applicable to proceedings in mandamus applied to the pleadings in a mandamus case and to the proceedings generally. It may be noticed in passing that § 5775, *supra,* which was an amendment to the Laws of 1895, is a literal translation of the California statute, and the presumption is that the construction which the courts of California placed upon the statute prior to the incorporation of that statute into our laws was taken into consideration by the legislature in adopting the California law. The case of *People v. Board of Supervisors,* just mentioned, was decided in April, 1865. The court in that case said:

"The final determination of the court in the matter is a judgment, and if rendered in any court but the supreme court an appeal lies from the judgment. The parties appear, and by their pleadings form issues, and if of fact they may be tried by a jury, and new trials may be had. The relator may in the same action recover the damages he may have sustained, and execution may issue for the damages and costs. In *People v. Croton Aqueduct Board* (5 Abb. Pr. 372), it is held that the rules of the code of New York do not apply to mandamus, because Sec. 471 (Code of New York) expressly excludes from their operation that class of cases. There is no such reservation in our Practice Act, and in our opinion the

general rules of that act are applicable to mandamus, in the same manner as to an action for an injunction or of *quo warranto;* and whatever may be the rule when the relator, after having procured the alternative writ, moves for the peremptory writ, we have no doubt that, when the relator proceeds by petition and notice for the peremptory writ, without procuring an alternative writ, the court, under the enlarged discretion conferred by Sec. 147, may grant any relief consistent with the case made by the petition, and embraced within the issues, although it may be only a part of that demanded in the prayer of the petition."

The same remark may be made in this case concerning the excluding statute of New York, viz., that there is no reservation in our practice act.

"Where the title to real property may be affected by proceedings for a mandamus, all persons having or claiming rights therein must be joined as respondents."   13 Enc. Pl. & Pr., p. 660.

It is also asserted in the same section that private persons specially affected by the act of an officer, to coerce whom mandamus proceedings were instituted, should be joined as defendants.   It would seem that the defendants Graham and Keene in this case are private persons whose interests would be affected by the coercive action on the treasurer.   In *Wright v. Commissioners of Gallatin County,* 6 Mont. 29 (9 Pac. 543), it was held, in a case where commissioners were sued to compel the awarding of a contract for printing, where bids had been submitted, that the validity of such contract could not be determined without joining the person to whom the contract had been awarded.   Here the land had, so far as the action of the treasurer could award, been awarded to the defendants Graham and Keene.   It was said in *State ex rel. Marsh v. Board of Land Commissioners,* 7 Wyo.

478 (53 Pac. 292), where it was sought to mandamus the board of land commissioners to execute a lease, and thereby confer upon relator the lessee's title while another lease covering the same land was in force, held by another party:

"It is elementary in our jurisprudence, that any person whose interests are directly involved in a legal proceeding shall have an opportunity to be heard, before a judgment can be rendered determining and concluding his rights."

"Nor will mandamus to compel the commissioner of the general land office to give title to public land be granted where it appears that there are other claimants who are not parties to the proceeding, notwithstanding that their claims are alleged in the petition to be void." Spelling, Injunctions and Other Extraordinary Remedies (2d ed.), § 1639.

In *Cullem v. Latimer,* 4 Tex. 329, where there was a claim to lands by different persons, the court said:

"The defendant, in his original answer, states that John H. Duke, John H. Glover, and others are interested in the matters contained in the plaintiff's petition, and prays that they may be cited to defend, as he has no other interest than as county surveyor. It is a rule in applications for mandamus that all persons principally interested in the defense must be included in the rule to show cause. . . . The writ issues to compel the performance of a duty, but the survey or patent being predicated on the supposition that the land is vacant, or if not vacant, that the claimant has the best right, all persons who, to the knowledge of the applicant, claim property in the land should be summoned to defend their rights."

We think, under the provisions of the Code and of authority generally, that the petition was not subject to the attacks made upon it either by demurrer or motion,

and that no error was committed in overruling both the motion and demurrer.

On the merits of the case, however, we are inclined to differ with the learned judge who tried the cause. We agree with the respondents that .the tender which was made by the relators was sufficient, and that, if the treasurer accepted the check of either of the parties as payment of the taxes, he would be precluded from now raising the question of non-tender. But the treasurer refused to execute the deed for the reason that, before the deed was executed, the land had been redeemed by the owner, Mrs. Graham. The statute seems to make provision for the redemption of the land at any time before the execution of the deed. It is stoutly contended by the respondents that there was no proof of ownership by Mrs. Graham, but we think the proof as presented to the treasurer was sufficient to justify him in issuing the certificate of redemption. The money was sent in her name by some one purporting to be an agent for her. The object expressed was the redemption of the land. These matters are not generally performed in any very formal way. In fact, the ordinary way of paying delinquent taxes is by sending the pay either directly by check, or, not uncommonly, through an agent; and the treasurer is not presumed to scan closely the relations existing between the owner and the assumed agent who is redeeming the land in the owner's name. It is true that neither the agent nor the owner testified in this cause, but the land was assessed in the name of "R. Graham," the foreclosure suit was against "R. Graham," and, while it does not appear conclusively that "R. Graham" was Rebecca Graham, it does appear that this same land had, in 1894, been distributed to Rebecca Graham, who was then the owner

of it, that the taxes began to accumulate in 1895, and that the agent redeemed the land for Mrs. Graham, the defendant. Moreover, it is testified by King, one of the attorneys in the case, that he knew Mrs. Graham, having acted for her as counsel in some other proceedings, and that she said she would tell Mr. Behrens, the agent who did send the money for the purpose of redeeming the property for her, to send the money to redeem this property. This, it is true, is hearsay testimony; but it was received without objection, and we know of no rule of law which would prevent this court from considering it. There are no equities in favor of the purchaser of the tax title in this case, the equities being with the redemptioner or the owners.

Under all the circumstances of the case, meager as the testimony is, we think the treasurer was justified in issuing the certificate of redemption and in refusing to execute the deed. The judgment will therefore be reversed, with instructions to the lower court to dismiss the petition.

REAVIS, C. J., and FULLERTON, ANDERS and MOUNT, JJ., concur.